■ ARLENE SCHULMAN et al., Appellants, v ISRAEL JACOBOWITZ et al., Respondents, et al., Defendants. [797 NYS2d 547]—

In a medical malpractice action to recover damages for wrongful death and conscious pain and suffering, the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Kings County (Spodek, J.), entered November 24, 2003, as, after a hearing, granted those branches of the separate motions of the defendant Israel Jacobowitz, the defendant Jacqueline Herron, and the defendants Rosamond Joycelyn Garraway-Shears, Joy Fletcher, Marie Jacques, "J" Meyer, "J" Aman, "J" McLaughlin, and "J" Yap, which were to dismiss the cause of action to recover damages for conscious pain and suffering pursuant to CPLR 3211 (a) (5) insofar as asserted against them as time-barred, and denied that branch of their cross motion which was to strike the affirmative defense of those defendants that the cause of action to recover damages for conscious pain and suffering was time-barred.

Ordered that the order is reversed insofar as appealed from, on the law and the facts, with costs, those branches of the motions which were to dismiss the cause of action to recover damages for conscious pain and suffering as time-barred are denied, that branch of the cross motion which was to strike the respondents' affirmative defense that the cause of action to recover damages for conscious pain and suffering is time-barred is granted, and that cause of action is reinstated insofar as asserted against the respondents.

This action, which was commenced on May 17, 2002, arises from the alleged medical malpractice of the defendants in failing to prevent and properly treat bed sores which led to the death of Daniel Schulman on January 14, 2000. Schulman suffered a stroke on July 27, 1999, while hospitalized at SUNY-Downstate Medical Center where he remained in the defendants' care until November 9, 1999, when he was transferred to a nursing home. The complaint alleged causes of action to recover damages for wrongful death and conscious pain and suffering. In opposition to the motions to dismiss the complaint as time-barred, the plaintiffs acknowledged that the wrongful death cause of action was time-barred by the two-year statute of limitations (*see* EPTL 5-4.1), but contended that the running of the

$2^1/_2$-year statute of limitations for the conscious pain and suffering cause of action (*see* CPLR 214-a) was tolled by the CPLR 208 insanity toll. Following a hearing on the issue of Schulman's mental condition to determine if the plaintiffs were entitled to a tolling of the statute of limitations pursuant to CPLR 208, the Supreme Court found that the plaintiffs failed to prove that the decedent's disability came within the scope of the insanity toll, and dismissed the complaint as time-barred insofar as asserted against the respondents.

The Supreme Court properly directed a hearing on the issue of Schulman's mental condition during the period of time following his stroke to determine whether his disability came within the ambit of the insanity toll of CPLR 208 (*see Rosenfeld v Schlecker*, 5 AD3d 461 [2004]; *Lynch v Carlozzi*, 284 AD2d 865 [2001]; *Stackrow v New York Prop. Ins. Underwriter's Assn.*, 115 AD2d 883 [1985]). However, we disagree with the Supreme Court's determination. At the hearing, the plaintiffs presented the testimony of Dr. Aric Hausknecht, board-certified in psychiatry and neurology, who opined that, based upon a review of Schulman's medical records, Schulman sustained a stroke on July 27, 1999, which affected his speech and memory and, from that time forward until his death, he was "significantly cognitively impaired." Dr. Hausknecht further testified that during that time, Schulman fluctuated between a stuperous and obtunded level of consciousness and, although there were times that he was alert and could answer "yes" and "no" rationally, there was no time when he could communicate his wants, needs, and feelings. Additionally, Schulman's hospital records indicated that by early August 1999, he had an inability to speak, had a depressed level of consciousness, was confused and lethargic, and opened his eyes to stimuli but could follow no commands. According to Dr. Hausknecht's review of the records, Schulman's condition did not change by the time of his transfer to a nursing home on November 9, 1999. Schulman's nursing home records indicate that on November 10, 1999, he was aphasic, suffered severe language and cognitive deficits, and had an inconsistent ability to follow directions. On December 1, 1999, the decedent's responses frequently were unintelligible and accompanied by incomprehensible jargon. According to Dr. Hausknecht's review of the nursing home records, Schulman's condition did not change significantly prior to his death on January 14, 2000.

The respondents argue that the plaintiffs failed to prove that Schulman's disability continued uninterrupted in light of his medical records which indicate that, at times during the relevant period, he was alert and able to intelligently communicate.

However, the test is not whether the decedent ever attained lucidity during that period, but whether, generally, he was "unable to protect [his] legal rights because of an over-all inability to function in society" (*McCarthy v Volkswagen of Am.*, 55 NY2d 543, 548 [1982]). Clearly, the uncontroverted evidence of the serious nature of the decedent's physical and mental condition which persisted from early August 1999 through his death on January 14, 2000, entitled the plaintiff to the benefit of this toll (*see Costello v North Shore Univ. Hosp. Ctr. for Extended Care & Rehabilitation*, 273 AD2d 190, 191 [2000]). Schmidt, J.P., S. Miller, Santucci and Mastro, JJ., concur.